**SMITH et al. v. GODART.    (No. 3395.)**

Court of Civil Appeals of Texas.    Texarkana. April 28, 1927.

**1. Fish** ⬤⇒3—**Legislature cannot confer right to go on another's land to fish in lakes thereon, and did not undertake to do so (Rev. St. 1925, art. 4026).**

Legislature had no power to confer on any one right to go on land of another to catch fish in lakes thereon, and did not attempt to do so by Rev. St. 1925, art. 4026.

**2. Fish** ⬤⇒5(1)—**Refusal to enjoin landowner's interfering with persons going on his land to fish in lakes thereon held proper (Rev. St. 1925, art. 4026).**

Regardless of Rev. St. 1925, art. 4026, relating to rights to fish, refusal to enjoin landowner from preventing parties from going on his land and fishing in lakes thereon was proper.

Appeal from District Court, Anderson County; Ben F. Dent, Judge.

Suit by H. G. Smith and others against Walter Godart for an injunction. From a judg-

ment for defendant, plaintiffs appeal. Affirmed.

Charles F. Gray and appellee, Walter Godart, owned 4,233.8 acres of land in the Simon Sanchez survey in Anderson county. The land, known as Long Lake plantation, was in the Trinity river bottom, about half a mile from the Trinity river. It was in a body inclosed by a fence, but was separated by crossfences within the inclosure into tracts of less than 2,000 acres each. Several natural freshwater lakes were on the land, the largest of the number, known as Long Lake, being about three-fourths of a mile long, about 100 yards wide, and of an average depth of about 6 feet. No waterway connected any of the lakes with the river but when the river overflowed water therefrom filled and surrounded the lakes. The lakes were well stocked with fish. There was no reservation of any right in the lake or the fish therein in the grant of the land to Sanchez. Eleven or twelve hundred acres of the land was cultivated by the owners thereof and their tenants. The entire tract was "posted" (article 1378, P. C. of 1925) in May, 1925, when appellants H. G. Smith, C. E. Smith and J. L. Robinson, citizens and taxpayers of said Anderson county, demanded and were refused a right to enter thereupon for the purpose of fishing in lakes thereon. This suit, commenced by appellants September 2, 1925, was for an injunction restraining said appellee, his agents and employees, from doing anything to prevent them from going upon the land and fishing in the lakes thereon. Appellants' claim of a right to enter upon the land and fish in the lakes was based on provisions in article 4026, R. S. 1925, as follows:

"All fish and other aquatic animal life contained in the fresh water rivers, creeks and streams and in lakes or sloughs subject to overflow from rivers or other streams within the borders of this state are hereby declared to be the property of the people of this state. All of the public rivers, bayous, lagoons, creeks, lakes, bays and inlets in this state, and all that part of the Gulf of Mexico within the jurisdiction of this state, together with their beds and bottoms, and all of the products thereof, shall continue and remain the property of the state of Texas, except in so far as the state shall permit the use of said waters and bottoms, or permit the taking of the products of such bottoms and waters, and in so far as this use shall relate to or affect the taking and conservation of fish, oysters, shrimp, crabs, clams, turtle, terrapin, mussels, lobsters, and all other kinds and forms of marine life, or relate to sand, gravel, marl, mud shell and all other kinds of shell, the game, fish and oyster commissioner shall have jurisdiction over and control of, in accordance with and by the authority vested in him by the laws of this state."

The trial was to the court without a jury. The appeal is from a judgment denying appellants the relief they sought, and in appellee's favor against them for costs.

---

⬤⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

E. V. Swift, of Palestine, for appellants.
J. D. Pickett, of Palestine, for appellee.

WILLSON, C. J: (after stating the facts as above). [1] It appeared without dispute in the evidence heard at the trial that there was no public road to the lakes in question, and that appellants could not get to same without traveling half a mile or farther over appellee's land. The Legislature was without power to confer upon any one a right to go upon land owned by another to catch fish in lakes thereon (Hartman v. Tresise, 36 Colo. 146, 84 P. 685, 4 L. R. A. [N. S.] 872; New England Trout & Salmon Club v. Mather, 68 Vt. 338, 35 A. 323, 33 L. R. A. 569; Knudson v. Hull, 46 Utah, 114, 148 P. 1070), and it will be noted that in enacting the statute set out in the statements above it did not undertake to exercise such power.

In the case first cited above the plaintiff claimed the defendant had unlawfully entered upon his land, and the latter defended on the ground that he had gone upon same for no other purpose than to fish in a natural stream of water thereon which had been stocked with fish at the public expense, and was within his rights in doing so because of a provision in the Constitution (article 16, § 5) of the state (Colorado) declaring "the water [quoting] of every natural stream not heretofore appropriated * * * to be the property of the public," and a statute (Laws 1903, p. 233) declaring "that the public shall have the right to fish in any stream in this state, stocked at public expense, subject to actions in trespass for any damage done property along the bank of any such stream." In reversing a judgment of the trial court sustaining the defendant's contention, the Supreme Court of Colorado said:

"Plaintiff owns land bordering on both banks of natural streams. As between him and the defendant, he owns the right of fishery in their waters within his outer boundaries. As between them, plaintiff also owns the beds of the streams just as much as he owns the adjacent banks or the soil anywhere within his surface lines. It necessarily follows that defendant has no right of fishery within plaintiff's inclosure. But, if he does, he certainly has no easement over any portion of plaintiff's property, either in the beds of the streams or the adjacent soil, for the purpose of reaching the streams. In the enjoyment of his private property plaintiff is protected, both by federal law and the state Constitution, against encroachment by defendant. Neither the state, nor an individual, nor a corporation to whom the right of eminent domain is delegated, can take private property for public use without just compensation; much less can the state, without any compensation at all, take the private property of one, and give it to another citizen to be enjoyed by the latter for a mere private use. A Legislature cannot make lawful a trespass by one man upon the lands of another by providing that, if any damage is thereby done, a recovery therefor may be had."

In the Mather Case an act of the Legislature of Vermont declaring the crossing of uncultivated land to take fish in public waters was not actionable, unless actual damages resulted from the trespass, was held to be unconstitutional, the Supreme Court saying:

"The Legislature could as well pass a law that any private property may be crossed against the will of the owner for the purpose of reaching a highway by land as to pass one that it may be thus crossed for the purpose of reaching public waters for the purpose of taking fish therefrom. The right of eminent domain can never be exercised for any merely private purpose, however much the public utility or convenience may be thereby subserved. Judge Isaac F. Redfield says that 'the owner of one rood of land may stand in the way of any private enterprise, however much the general utility may be thereby hindered, and no human power in a free country, where the principles of Magna Charta prevail in their full force, can compel him to budge one step.'"

And see 26 C. J. 598, 599, 601; 11 R. C. L. 1032; Hume v. Packing Co., 51 Or. 237, 83 P. 391, 92 P. 1065, 96 P. 865, 31 L. R. A. (N. S.) 396, 131 Am. St. Rep. 732, and note thereto; Gratz v. McKee (C. C. A.) 270 F. 713, 23 A. L. R. 1393 and note thereto; 6 R. C. L. 472 et seq.

[2] Of course, if a right to go upon appellee's land without his consent could not have been conferred upon appellants, they had no such rights, and the judgment is not erroneous. Therefore it is affirmed.